UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHANIE DANIELS,  Plaintiff,  v.  GRAND LUX CAFÉ, LLC and THE CHEESECAKE FACTORY, INCORPORATED,  Defendants. | HONORABLE JOSEPH E. IRENAS  CIVIL ACTION NO. 12-7848 (JEI/KMW)  OPINION |

**APPEARANCES:**

ZARWIN, BAUM, DEVITO, KAPLAN, SCHAER & TODDY, P.C.
By: Zachary A. Silverstein, Esq.
    David F. McComb, Esq. (*pro hac vice*)
1818 Market Street, 13th Floor
Philadelphia, PA 19103

By: Jill Fisher, Esq.
5 Greentree Centre, Suite 303
Marlton, NJ 08053
    Counsel for Plaintiff

BALLARD SPAHR LLP
By: Patricia A. Smith, Esq.
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey, 08002
    Counsel for Defendants


**IRENAS**, Senior District Judge:

   Plaintiff, a former employee of Defendants Grand Lux Café,

LLC (Grand Lux) and The Cheesecake Factory, Incorporated

1

(Cheesecake Factory),[1] brought this action after her alleged sexual assault at the hands of another former employee, Francis de los Hoyos.

Presently before the Court is Defendants' motion *in limine* to exclude the report and testimony of Plaintiff's expert Dr. Jane Gray.  For the reasons explained herein, Defendants' motion is **GRANTED.**

## I.   BACKGROUND

The Court recites only those facts relevant to the pending motion.

### A. Plaintiff's Alleged Sexual Assault

Plaintiff was hired as a server at a new Grand Lux Café in the Cherry Hill Mall around June 12, 2012.  (Plaintiff's Opposition ("Pl.'s Opp.") at 3)  Mr. de los Hoyos, who worked at the time as a cook at a Cheesecake Factory restaurant in Florida, was flown in to train other cooks at the new Grand Lux in a position known as "designated trainer" ("DT").  (Id.)

Defendants maintain a policy against DTs fraternizing with restaurant employees, such as Plaintiff.  (Defendants' Motion ("Defs.' Motion") at 1)  Despite that policy, on July 16, 2012, Plaintiff, accompanied by two friends who were also employees of

---

[1] The Cheesecake Factory is the parent company of Grand Lux.

Defendants, went out for drinks with Mr. de los Hoyos.[2] (Pl.'s Opp. at 4)  Apparently changing the group's original plan to go to a bar frequented by other DTs, Mr. de los Hoyos selected as their destination a bar at which other trainers would not be present.  (Id. at 5)  Plaintiff remembers having a few drinks but claims to remember little else; she believes Mr. de los Hoyos slipped drugs into her drink when she went to the bathroom.  (Id.)  Plaintiff woke up the next morning in Mr. de los Hoyos's hotel room.  (Id.)  He instructed her to leave the hotel through a side door to avoid detection and then drove her to her car.  (Id.)

When Plaintiff reported to work on July 18, 2012, a co-worker informed her that a picture of a naked woman who looked like Plaintiff was circulating among the staff.  (Id. at 6)  Plaintiff notified her supervisors, including DT Raven Adair, and, on July 21, 2012, reported the incident as a sexual assault to the Mount Laurel Police Department.  (Id.)

On December 26, 2012, Plaintiff filed the present action in Camden County Superior Court, which Defendants later removed to this Court.  Plaintiff's Complaint asserts two counts: (1) Defendants' creation of a hostile work environment in violation

---

[2] Plaintiff claims that she did not know Mr. de los Hoyos would be joining, but that one of her friends, a cook training with Mr. de los Hoyos, told the group they would be picking Mr. de los Hoyos up on their way out. (Pl.'s Opp. at 4)

3

of New Jersey's Law Against Discrimination (LAD) and (2) negligent hiring, retention, training and supervision. Plaintiff alleges that Defendants are vicariously liable for Mr. de los Hoyos's conduct because of their "negligence in failing to have in place and/or enforce adequate and effective hiring policies and practices, sexual harassment and/or fraternization policies, and adequate supervision, training and monitoring of their employees and their sexual harassment and/or fraternization policies and procedures." (Compl. ¶ 30) Under the negligence count, Plaintiff alleges that Defendants breached their duty of care to keep employees such as Plaintiff safe from harm by "negligently failing to have in place adequate and effective hiring policies and negligently failing to adequately and effectively train, supervise, control or otherwise monitor Mr. de los Hoyos's activities." (Id. at ¶ 35) Plaintiff states further that this breach of Defendants' duty of care was the foreseeable direct and proximate cause of Plaintiff's injuries. (Id. at ¶¶ 35-37)

### B. Dr. Gray's Report

Plaintiff retained Dr. Jane Gray in November 2013 to "review and assess materials relevant to this matter and to offer an opinion regarding the sexual harassment policies of the defendants, as well as their employee training and supervision." (Pl.'s Opp. at 7) Dr. Gray earned a Ph.D. from Ohio State

4

University in Sociology with a focus on Criminology. (Deposition of Dr. Jane Gray ("Gray Dep.") at 16:15-20) She wrote her dissertation on sexual crime and sexual deviants, particularly individuals who go to public places for impersonal sex. (Id. at 16:21-17:3) Dr. Gray has since taught numerous criminology courses and been retained in over forty-five cases as an expert in "the field of social science research in general, and criminal behavior in particular." (Gray Expert Report ("Gray Rpt.") at 2) Thirty-eight of those cases involved "issues related to criminal acts committed in the context of premises liability or negligent hiring and retention litigation." (Id.) Dr. Gray conceded in her deposition that there is nothing in her CV that would qualify her as an expert in sexual harassment policies, but stated that her expertise in "criminal outcomes" gives her the basis for commenting on the foreseeability of misconduct in Defendants' work environment. (Gray Dep. at 39:17-40:7; 49:17-50:24)

In January 2014, Dr. Gray issued a report stating the following three opinions: (1) Defendants "lacked due care in their failure to provide an effective sexual harassment policy and program for their employees"; (2) Defendants "lacked due care in their failure to provide ongoing training to Designated Trainers who were traveling in the field"; and (3) "the sexual assault perpetrated by Francis de los Hoyos upon Stephanie

5

Daniels on July 16, 2012 was causally related to the lack of effective training, monitoring, and supervision provided by [Defendants] to their Designated Trainers."  (Gray Rpt. at 3-4) In support on these conclusions, Dr. Gray cites Defendants' "rudimentary" training of employees in sexual harassment and a "culture of permissiveness" overriding actual policies.  (Id.)

Defendants, citing Dr. Gray's expertise in criminology and lack of experience in sexual harassment policies, filed the present motion *in limine* to exclude Dr. Gray's testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

The Court held oral argument on March 23, 2015.  During oral argument, Plaintiff conceded that Dr. Gray is not an expert in sexual harassment policies and stated that she would not be qualified to offer testimony on what policies, procedures or training Defendants should have had in place.  Instead, Dr. Gray's testimony would be limited to the consequences of inadequate policies, procedures, and training in Defendants' workplace.  Defendants submitted further evidence of DT training regarding sexual harassment policies that Defendants produced to Plaintiff but that Plaintiff apparently did not provide to Dr. Gray.  (5/23/2015 Hearing, Defs.' Ex. 2)

6

**II.   STANDARD**

Under Federal Rule of Evidence 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>    (b) the testimony is based on sufficient facts or data;
>    (c) the testimony is the product of reliable principles and methods; and
>    (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert*, the Supreme Court imposed a "gatekeeping" role on district courts to "ensure that any and all expert testimony or evidence is not only relevant, but also reliable." 509 U.S. at 596. This gatekeeping obligation applies not only to testimony based on scientific knowledge, "but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

The Third Circuit has articulated three major requirements on the admissibility of expert testimony under Rule 702: "(1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). In short,

proposed expert witnesses must satisfy a trilogy of restrictions: "qualification, reliability, and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).

### III. ANALYSIS

Defendants ask the Court to exclude Dr. Gray's report and testimony because (1) "she is not qualified to offer her opinions as they are outside her area of expertise," (2) "she has not used a reliable methodology in reaching her opinions," and (3) "her testimony does not assist the trier of fact and improperly usurps the role of the jury by opining on ultimate issues in the case." (Def.'s Motion at 1)  The Court will address each of these issues in turn.

#### A. Qualifications

Dr. Gray's expertise in criminology does not qualify her to offer opinions on the adequacy of Defendants' sexual harassment policies.

The Third Circuit has held it to be an "abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Pineda*, 520 F.3d at 244. Nevertheless, "[a]n expert may be generally qualified but may

8

lack qualifications to testify outside his area of expertise." *Calhoun v. Yamaha Motor Corp.*, U.S.A., 350 F.3d 316, 322 (3d Cir. 2003).

Plaintiff argues that Dr. Gray's specialization in criminal outcomes is appropriate here because her testimony will show that Defendants' sexual harassment policies and training were not sufficient to prevent the criminal outcome of Mr. de los Hoyos's alleged sexual assault. Plaintiff also points to the "liberal" interpretation of Rule 702's "qualifications" requirement. Defendants state that Dr. Gray's expertise is not sufficiently related to the subject matter of her testimony so as to qualify her as an expert in this case.

Although Dr. Gray's findings concern the adequacy of sexual harassment policies, she has no prior experience reviewing or evaluating such policies. During her deposition, she conceded her lack of expertise on the very issues for which she was retained to offer an opinion:

> Q. Do you consider yourself to be an expert on the effectiveness of sexual harassment policies?
> A. Not an expert specifically on that . . . .
> Q. Have you ever been retained to opine on the efficacy of a sexual harassment policy?
> A. No.
> Q. Have you ever before been retained to opine on the efficacy of sexual harassment procedures?
> A. No.
> Q. Have you ever been retained to opine on the efficacy of sexual harassment training in the workplace?
> A. No.

> Q. Is there anything in your CV or your website that would qualify you as an expert in those areas?
> A. Not in sexual harassment policy, no.
> Q. Or procedure?
> A. Or procedure.
> Q. Or training?
> A. Or training. My expertise resides in prediction of criminal outcomes.
> Q. Do you have any knowledge of what would constitute industry standards for sexual harassment policies in the restaurant industry?
> A. No.

(Gray Dep. at 49:17-50:25)

Dr. Gray's report also reveals the disconnect between her past experience as an expert and her current assignment. In the "Qualifications" section, Dr. Gray writes that her "education and experience in the field of criminology qualifies me to render expert opinions concerning issues of foreseeability of crime and negligent hiring, retention, training and supervision of employees." (Gray Rpt. at 2) Two paragraphs later, however, she states that the thirty-eight prior cases in which she had been retained as an independent consultant "involved issues related to criminal acts committed in the context of a premises liability or negligent hiring and retention litigation." (Id.) She was not retained in those matters to opine on the "training and supervision" issues she claims to be part of her expertise. The present case appears be her first foray into those subjects.

That Dr. Gray admits to not being an expert in sexual harassment policies and training does not, by itself,

necessarily disqualify her from offering expert testimony in this case.  See *Pineda*, 520 F.3d at 245.  In *Pineda*, the Court of Appeals found an engineer qualified to testify about the adequacy of service manual instructions even though he admitted he was not a warnings expert.  Plaintiff in that case was an automobile technician who suffered injuries while repairing a car's liftgate and brought a products liability suit against the automobile manufacturer.  The Court found the expert to be "substantively qualified to testify on [the warnings] because a proper warning is also a solution to an engineering problem."  *Id*.  The Court relied on the fact that his expertise was in the stresses and other forces that might cause a material like glass to fail, which, as an engineering issue, went to the substance of the warnings.  *Id*.

While an expert's specialization need not be the "most appropriate" for the expert to be qualified under Rule 702, that specialization must still be appropriate in some substantive respect.  Here, Plaintiff presents no evidence, and Dr. Gray does not actually claim, that a proper sexual harassment policy would solve a criminology problem – that an individual inclined to engage in criminal behavior, such as sexual assault, would be less likely to do so if a stronger non-fraternization policy were in place.  Neither does Dr. Gray's expertise relate to sexual harassment or human resources issues in general.  She

cannot speak to standard industry practice, which policies tend to work, or how employers could best implement their policies. Plaintiff states that she would limit Dr. Gray's testimony to the consequences (i.e. foreseeable criminal outcome) of Defendants' inadequate sexual harassment policies and procedures, but that conclusion assumes that Defendants' policies and procedures were insufficient.

The Court simply cannot find Dr. Gray, an expert in criminal outcomes, substantively qualified to provide expert testimony on the adequacy of sexual harassment policies and procedures in a hospitality industry workplace.  That subject is better suited to a human resources expert.[3]  The very concept of due care, and any opinion as to whether Defendants exercised such care in the context of providing effective policies and procedures, requires knowledge of what would satisfy that standard.  Dr. Gray could not opine on that subject.[4]

Plaintiff retained Dr. Gray to comment on the inadequacy of Defendants' policies and procedures.  Since Dr. Gray lacks any

---

[3] Some courts have even found general human resources experts unqualified to testify on this subject. *See Carlson v. C.H. Robinson Worldwide, Inc.*, No. Civ.02-3780 JNE/JGL, 2005 WL 758602 (D. Minn. March 31, 2005) (finding an individual with thirty years of experience in the human resources field unqualified to be an expert in the field of sexual harassment in the workplace where her "resume fails to identify any experience, skill, training, or education in sexual harassment in the workplace").

[4] Although Plaintiff's Complaint alleges negligent hiring, Dr. Gray's report does not broach that issue and Dr. Gray stated during her deposition that she was not retained to offer an opinion on the hiring of Mr. de los Hoyos.

knowledge and experience regarding sexual harassment policies and procedures, the Court will not accept her as an expert qualified to offer opinions on those subjects.

### B. Reliability

The Court also finds Dr. Gray's testimony on the adequacy of Defendants' sexual harassment policies, procedures and training to be unreliable. According to the Supreme Court, the reliability inquiry "must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 594. An expert's testimony is admissible in this regard "so long as the process of technique the expert used in formulating the opinion is reliable." *Pineda*, 520 F.3d at 244. In other words, "the expert's opinion must be based on methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief." *Calhoun*, 350 F.3d at 321 (internal quotations omitted).

The Third Circuit has laid out several factors for district courts to consider when determining the reliability of proposed expert testimony:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be

13

>  reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Calhoun*, 350 F.3d at 321.  "In assessing reliability, a court need not rely exclusively on this list and may take into account any other relevant factors.  *Id*.  "[T]he law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination."  *Kumho Tire*, 526 U.S. at 142 (emphasis in original).

As the Court understands Dr. Gray's methodology, she came to her conclusion as to the adequacy of Defendants' sexual harassment policies by first considering the general potential for sexual misconduct, as a criminal outcome, in the hospitality industry, and then determining whether, with the relevant policies and procedures in place, Defendants' work environment was still conducive to such criminal outcomes.  She states that she reviewed Defendants' policies and procedures, along with the filings in the present case, and relied on her "familiarity and understanding of criminal behavior."  (Gray Rpt. at 3)  Dr. Gray also references the work of certain researchers on the social informality that exists within the hospitality industry.  However, during her deposition, Dr. Gray admitted that her conclusions regarding what she calls Defendants' "culture of permissiveness" stemming from sexual harassment policies and

14

procedures with "no teeth" – the basis for her ultimate opinions – relied on the deposition testimony of only one individual, DT Raven Adair, who testified that she was aware of and did not report violations of the non-fraternization policy on a couple of occasions. (Gray Dep. at 86:25-87:11; 89:13-90:4) During oral argument, Plaintiff did not dispute that this finding rests on Ms. Adair's testimony alone.

Dr. Gray's methodology does not constitute good grounds for her opinions on the adequacy of Defendants' sexual harassment policies. Dr. Gray makes no mention of, and seems not to have reviewed, any other sexual harassment policies or procedures, or any materials detailing what would be a satisfactory policy. She does not know the industry standards for such policies. As a result, and considering Dr. Gray's admitted inexperience regarding sexual harassment policies, there is no foundation from which Dr. Gray could come to any reliable conclusion as to what kind of policy would be effective or the general practices in the hospitality industry. For example, she refers to Defendants' sexual harassment training as "rudimentary" without any basis for knowing what a superior training system would involve. That there are specific sexual harassment training materials Dr. Gray did not review before writing her report, which Plaintiff did not dispute at oral argument, further erodes the grounds for her ultimate opinions. Tellingly, Dr. Gray

15

avoids detailing what specific mechanisms would be adequate to prevent sexual harassment in the hospitality industry workplace:

> Q. What kind of supervision do you believe an employer should be exercising over their adult employees who are staying overnight in hotels on business trips?
> A. In this case, I am suggesting that the DTs have an effective supervisor also staying in the hotel.
> Q. To do what?
> A. To enforce the policies. To enforce policies such as no fraternizing, and I've been reading in Adair's deposition that she would witness that, yet not report it.
> Q. Is it your belief that it's an employer's obligation to station management personnel in a hotel any time they have lower level employees staying overnight on business trips?
> A. I'm not suggesting that. That's a blanket statement. I am just, again, as a criminologist, trying to give testimony as to how I assess environments being conducive or non-conducive to criminal behavior.

Dr. Gray refuses to make what she calls a "blanket statement" about what should be Defendants' policy. That is not her expertise, as Plaintiff concedes. Yet, such line drawing, which would be the province of a human resources expert familiar with industry standards, seems essential to any conclusion as to the adequacy of any particular policy.[5] Simply put, if she cannot explain what "due care" in designing and implementing a sexual harassment policy looks like – i.e. industry standards – it

---

[5] Even had Dr. Gray detailed an adequate or effective policy, such a description would be entirely hypothetical, as Dr. Gray, who has never testified regarding sexual harassment policies before, has no basis for concluding which policies work and which do not.

16

would be improper to allow her to testify that Defendants failed to exercise "due care" in this case.

The Court also finds it concerning that Dr. Gray bases her conclusion as to inadequate training and the permissive culture at Defendants' workplace on a few lines in the deposition testimony of one individual, DT Raven Adair, who stated only that she was "aware" of DTs and trainees fraternizing "a couple of times." (Adair Dep. at 26:5-16) Since Dr. Gray has not made (and, presumably, cannot make) comparisons between Defendants' policies and procedures, and those of other employers in the hospitality industry, her opinions regarding the inadequacy of Defendants' policies and procedures hinge on on the "culture of permissiveness" at Defendants' workplace. Yet, Ms. Adair's vague statement, at best, evidences only the unsurprising fact that employees occasionally disobey written policies. In the end, Dr. Gray's reasoning appears circular - there must have been inadequate sexual harassment policies, procedures, and training because the policies were violated. This is not a sound foundation for Dr. Gray's conclusions and the Court will therefore grant Defendants' motion to exclude her report and testimony.

### C. Fit

To be admissible, "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact."

*Calhoun*, 350 F.3d at 321. Dr. Gray's report does not meet this requirement for two reasons. First, Dr. Gray provides legal conclusions that invade the province of the jury. Second, to the extent Dr. Gray does not present legal conclusions, the Court questions the helpfulness of her report and testimony.

Plaintiff's present claims rest on her allegations that Defendants failed to put in place adequate sexual harassment policies and procedures, and failed to supervise and monitor compliance with those policies and procedures. Under New Jersey law, "a plaintiff may show that an employer was negligent by its failure to have in place well-publicized and enforced anti-harassment policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms." *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 621 (1993). "[T]he existence of effective preventative mechanisms provides some evidence of due care on the part of the employer . . . . Similarly, given the foreseeability that sexual harassment may occur, the absence of effective preventative mechanisms will present strong evidence of an employer's negligence." *Id*. at 621-22.

"The rule against the admissibility of legal conclusions is well-settled." *Suter v. Gen. Acc. Ins. Co. of Am.*, 424 F. Supp. 2d 781, 793 (D.N.J. 2006). Here, Dr. Gray's opinions do little more than mimic the framework for vicarious liability in hostile work environment sexual harassment cases. She writes that

Defendants "lacked due care" in their failure to provide an "effective sexual harassment policy and program" and ongoing training.  She also concludes that Mr. de los Hoyos's alleged sexual assault of Plaintiff was "causally related to the lack of effective training, monitoring, and supervision."  In using this language, which also happens to mirror the language of Plaintiff's Complaint, Dr. Gray addresses ultimate legal issues in this case that are outside her purview, of little use to the finder of fact, and therefore inadmissible.

It is also unclear how helpful the remainder of Dr. Gray's expert report would be to the jury.  She states that the restaurant industry workplace environment, in which young employees often drink and socialize, is "highly conducive to behaviors associated with sexual misconduct and, therefore, should be monitored and supervised in some meaningful way." (Gray Rpt. at 4)  The Court doubts that a jury needs an expert to understand the potential for fraternization in such a setting.  Dr. Gray then opines on Defendants' culture of permissiveness in which policies go unenforced.  Yet, as discussed above, she bases that conclusion on Raven Adair's deposition testimony alone.  Merely reframing Ms. Adair's statement is not helpful for the jury; the jury would be better off hearing Ms. Adair's testimony and drawing its own conclusions.

Here, it would be helpful for the jury to know what steps employers, specifically those in the hospitality industry, generally take to prevent sexual harassment in the work place.[6] That is not the substance of Dr. Gray's report and Dr. Gray has no basis for providing such testimony.

### IV.

For the reasons set forth above, the Court will **GRANT** Defendants' motion to exclude Dr. Gray's expert report and testimony.  An appropriate Order accompanies this Opinion.

Date: March 26, 2015

s/ Joseph E. Irenas
**Joseph E. Irenas, S.U.S.D.J.**

---

[6] This finding is in line with an earlier unpublished opinion from this Court in a Title VII and LAD hostile work environment case regarding the admissibility of testimony from an expert on sexual harassment in the workplace. *Blakey v. Cont'l Airlines, Inc.*, No. 93-2194, 1997 WL 1524797 (D.N.J. Sept. 9, 1997).  In *Blakey*, the Court excluded the expert's legal conclusions, but allowed limited testimony on "the general policies and practices a company may undertake in an effort to be effective in preventing and addressing allegations of sexual harassment."  *Id*. at *4.